## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| NOVA OCULUS PARTNERS, LLC, and<br>AMC HOLDING COMPANY, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| AMERIVISION INTERNATIONAL, INC., | ) | |
| BLAIR MOWERY, and | ) | |
| MARSHALL MASKO, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs Nova Oculus Partners, LLC and AMC Holding Co. (collectively hereinafter "Plaintiffs"), by and through counsel, for their Complaint against Defendants Amerivision International, Inc., Blair Mowery, and Marshall Masko (collectively hereinafter "Defendants"), state as follows:

### The Parties

1.      Plaintiff Nova Oculus Partners, LLC ("Nova Oculus") is a Delaware corporation in good standing with a principal place of business located at 74-900 Highway 111, No. 127, Indian Wells, CA, 92210.  Nova Oculus was formed to develop, manufacture, and lease or sell to medical professionals equipment, supplies, and services, including an electrotherapeutic medical device to mitigate the effects of the dry version of age-related macular degeneration ("AMD").

2.      Plaintiff AMC Holding Company, LLC ("AMC") is a Delaware limited liability company with a principal place of business located at 74-900 Highway 111, No. 127, Indian Wells, CA, 92210.  AMC wholly owns Nova Oculus.

3.      Amerivision International, Inc. ("Amerivision") is a Minnesota corporation with a principal place of business located at 3800 American Blvd. W, Suite 1130, Bloomington, MN 55431.  Amerivision states that it is engaged in developing therapy and treatment related to dry AMD.  *See* Amerivision corporate homepage ("Amerivision Webpage"), attached hereto as Exhibit A.  Amerivision claims that, "Prior to [Amerivision's] treatment, there is no standard of care and no treatment that restores or improves eyesight for patients with dry macular degeneration." *Id.*  On information and belief, Amerivision was incorporated in Minnesota on or about November 17, 2015.  *See* Amerivision Corporate Filings with Minnesota Secretary of State at 1-2, attached hereto as Exhibit B.

4.      Blair Mowery is a former employee of Acuity Medical International, Inc. ("Acuity").  Mr. Mowery was the Chief Executive Officer of Acuity through at least December 31, 2013.  On information and belief, Mr. Mowery is currently the Chief Executive Officer of Amerivision.   On information and belief, Mr. Mowery was one of two incorporators of Amerivision, incorporating that company on November 17, 2015.  *See* Exhibit B at 1-2. On information and belief, Mr. Mowery resides at 11927 Germaine Terrace, Eden Prairie, MN 55347. *Id.*

5.      Marshall Masko is a former employee of Acuity.  During his employment, Mr. Masko was the Chief Marketing Officer of Acuity through at least December 31, 2013.   On information and belief, Mr. Masko is the Chief Operating Officer of Amerivision.   On information and belief, Mr. Masko was one of two incorporators of Amerivision, incorporating that company on November 17, 2015.  *See* Exhibit B at 1-2.  On information and belief, Mr. Masko resides at 4683 Chantrey Place, Minnetonka, MN 55345. *Id.*

**Jurisdiction and Venue**

6.     This Court has jurisdiction over this action under 28 U.S.C. § 1331.  This action arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b), which presents a federal question.

7.     Jurisdiction is also proper before this Court pursuant to 28 USC §1332(a) because there is complete diversity between the parties and the amount in controversy, excluding interest and costs, exceeds $75,000.  The economic harm caused to Plaintiffs by the Defendants' misuse of patent rights, trade secrets and confidential information exceeds that amount.  The patent rights, trade secrets and confidential information in dispute were part of the overall price of $575,000 paid by Plaintiffs to acquire assets, including the intellectual property, of Acuity.  The amount in controversy is also shown in the expected market value of the commercial products associated with such misappropriated intellectual property, including the market value of the sales of commercial products for treating dry AMD.

8.     Venue is proper before this Court pursuant to 28 USC §1391(b) because: (i) Defendant Amerivision is incorporated in the District of Minnesota and has its primary place of business there; (ii) on information and belief, Defendants Masko and Mowery work and reside in the District; and (iii) the substantial part of the conduct and events at issue occurred in the District.

**General Allegations**

9.     Nova Oculus is in the business of developing, manufacturing, and leasing to medical professionals, medical equipment, supplies and services, including an electrotherapeutic medical device to mitigate the effects of the dry version of AMD.  Nova Oculus was initially incorporated as The Eye Machine, LLC, in 2014.

10.     Acuity Medical International, Inc. ("Acuity") was a South Dakota corporation that was the subject of an involuntary bankruptcy proceeding in Bankruptcy Case No. 15-40126, filed in the United States Bankruptcy Court, District of Minnesota ("Bankruptcy Proceedings").   On June 11, 2015, after a public notice, the bankruptcy trustee of Acuity sold, conveyed, and quitclaimed all of Acuity's intellectual property and tangible property to AMC, as shown in the Trustee Bill of Sale ("IP Purchase Contract") attached hereto as Exhibit C.

11.     AMC acquired the interest in Acuity's assets from the Bankruptcy Proceedings for use by its subsidiary, Nova Oculus, via the IP Purchase Contract.   Nova Oculus sought to use such property to develop, manufacture, and lease or sell products and services for the treatment of dry AMD.

12.     Until the filing of the Bankruptcy Proceedings, Acuity was engaged in research and development to create products and methods of treatment related to AMD.   Acuity was particularly involved in developing treatments related to dry AMD.   Acuity developed significant intellectual property in the forms of patents, patent applications, trade secret information, and confidential information, all directed to the treatment of AMD and, particularly, to the treatment of dry AMD.   As Acuity was actively researching and developing new products and technologies, a significant portion of intellectual property took the form of trade secret and confidential information.   Notably, Acuity had products and services for dry AMD treatment in development immediately prior to the Bankruptcy Proceedings.   Some of these products under development at Acuity were never publicly revealed or released into the market.   Therefore, their development remained trade secret and/or confidential information of Acuity.

13.     Mr. Mowery and Mr. Masko were high-level executives of Acuity, until at least December 31, 2013.   Specifically, Mr. Mowery was employed as the Chief Executive Officer of Acuity from at least 2009 through as least December 31, 2013.   Mr. Masko was employed as the

Chief Marketing Officer of Acuity from at least 2009 through at least December 31, 2013 and possibly until at least April 5, 2014.

14.     In their capacities as executives and employees of Acuity, both Mr. Mowery and Mr. Masko had access to confidential and trade secret information associated with Acuity's product research, product development, and product sales strategies.  Mr. Mowery and Mr. Masko also authored and received documents related to Acuity's efforts to develop and sell products related to AMD and, specifically, to dry AMD.  On information and belief, in 2013, Mr. Mowery and Mr. Masko were the only full-time employees of Acuity.

15.     From at least 2010 until the departures of Mr. Mowery and Mr. Masko, Acuity was engaged in developing technologies related to the treatment of dry AMD.  Early iterations of Acuity's products for AMD included the TheraMac$^{TM}$ device.  Acuity employees John Jarding and George O'Clock were involved in developing these initial products.  Some of Acuity's initial inventions related to products under development and are reflected in patent filings including U.S. Pat. No. 6,275,735 (the "'735 Patent").  The '735 Patent was conveyed in the sale from Acuity to AMC in the IP Purchase Contract.

16.     Starting in at least 2012, Acuity began to work on research and development to create new products and services for treating dry AMD.  The products and services included an offering that involved the use of microcurrent stimulation therapy at specific points on the upper and lower eyelids of a patient.  At least one such product offering was actively in development and testing in 2013, while Mr. Mowery and Mr. Masko were still employed at Acuity.  Mr. Mowery authored a document discussing at least one such product offering that involved the application of microcurrent stimulation to the upper and lower eyelids of a patient with dry AMD.  On information and belief, Mr. Mowery and Mr. Masko understood that the product development and design activities, discoveries, internal testing, and non-public Acuity business

records were treated as proprietary.   On further information and belief, Mr. Mowery and Mr. Masko and others working with them at Acuity took steps to maintain the confidentiality of Acuity's product development and design activities, discoveries, internal testing, and non-public Acuity business records.

17.     Acuity's new dry AMD product, although well along in the development process, could not reach market in 2013.   Relatedly, Acuity faced significant financial hardship in this same period as it received no new investments from the beginning of 2012 until the end of 2013. Because of such financial hardships, the Board of Directors of Acuity voted on December 27, 2013 to terminate the contracts of Mr. Masko and Mr. Mowery effective on December 31, 2013.

18.     During their employment as Acuity executives, Mr. Mowery and Mr. Masko both signed Employment Agreements that contained provisions regarding "Trade Secrets; Confidential Information; Noncompetition" ("Intellectual Property Provisions").     The Intellectual Property Provisions are identified in at least Section 8 of Mr. Mowery's Employment Agreement and Section 7 of Mr. Masko's Employment Agreement.   Mr. Mowery's Employment Agreement and Mr. Masko's Employment Agreement are attached hereto as <u>Exhibit D</u> and <u>Exhibit E</u>, respectively.   Notably, the first subsection of the Intellectual Property Provisions in each Employment Agreement states:

> a)     "During the Term of this Agreement Employee will have access to and become acquainted with various trade secrets or confidential information owned by Company, which are regularly used in the operations of the business of Company, which are not readily ascertainable or known by parties outside Company, and which are being made known to Employee in confidence.   In light of the foregoing and the realization by Employee and Company that Company's trade secrets and confidential information are

valuable asset of Company and form the foundation upon which much of Company's success and existence depend, Employee hereby agrees that Employee will not at any time, whether during or subsequent to the Term of Employees employment by Company in any fashion, form, or manner unless specifically consented to in writing by Company either directly or indirectly use make available to, divulge, disclose or otherwise communicate to any person, firm, or corporation in any manner whatsoever any confidential information of any kind, nature or description concerning matters affecting or relating to the business and products of Company other than in the course of Employees assigned duties and for the benefit of Company."

b)     "All know-how and trade secret information, product development or improvements conceived or originated by Employee, whether patentable or not, that arises out of the performance of his obligations or responsibilities under this Agreement or any related material or information shall be and remain the property of the Company, and all rights therein are by this Agreement assigned by Employee to the Company."

c)     "Confidential information shall include, without limiting the generality of the foregoing the names of any of its customers, its marketing methods, data and plans, the names of vendors, consultants, customer lists, or other written records used in Company's business, compensation paid to employees or consultants and other terms of employment or engagement, any and all confidential information provided to Company by its customers, consultants or vendors, Company's financial statements and all information of any type relating to Company's financial statements or financial condition, research and

product development activities, ideas, methods or projects carried on by Company, and all documents containing or referring to such research and development, or any confidential information of, about or concerning the business and products of Company its manner of operation or other confidential data or trade secrets of any kind, nature or description."

d)     "The foregoing shall not apply to information that (i) was known to the public prior to its disclosure to Employee; (ii) becomes known to the public subsequent to disclosure to Employee through no wrongful act of Employee or any representative of Employee; or (iii) Employee is required to disclose by applicable law, regulation or legal process (provided that Employee provides Company with prior notice of the contemplated disclosure and reasonably cooperates with Company at its expense in seeking protective order or other appropriate protection of such information.  Notwithstanding clauses (i) and (ii) of the preceding sentence, Employee's obligation to maintain such disclosed information in confidence shall not terminate where only portions of the information are in the public domain."

e)     "Company and Employee stipulate that as between them that the confidential information and trade secrets are important and material to Company's business, provide Company with competitive advantages, and affect the successful conduct of Company's business, and its goodwill, and that any breach of any term of this paragraph is material breach of this Agreement.  All equipment, notebooks, documents, memoranda, reports, files, samples, books, correspondence, lists, computer programs, drawings, diagrams, manuals, mechanisms, devices, creations, specifications, quotations

and all other written or graphic records in any manner affecting, recording or relating to the business of Company, which Employee shall prepare, use, construct, observe possess or control shall at all times be and remain Company's sole property. Employee shall not disclose, divulge, describe or communicate in any manner whatsoever any of the foregoing to any person not employed by Company without Company's express written permission. Employee specifically agrees that all confidential information and/or trade secrets of Company shall be treated as confidential by Employee without regard to whether any specific item of information or material has been labeled "Confidential," "Secret" or "Trade Secret" or any similar designation. Any information of Company which is not readily available to the public shall be considered trade secret unless Company advises Employee otherwise."

19.    The Employee Agreements further specified that the obligations related to "Trade Secrets; Confidential Information; Noncompetition" set forth above "shall survive the termination or expiration of Employee's employment with Company and shall be fully enforceable hereafter."   As such, Mr. Mowery and Mr. Masko were required to maintain the secrecy and confidentiality of Acuity's intellectual property interests after their employment ended.

20.    The Employee Agreements further noted: "This Agreement shall be binding upon, and inure to the benefit of, the parties and their respective heirs, executors, administrators, successors and assigns."

21.    Despite these provisions in their respective Employment Agreements and the duties of confidentiality they had undertaken for the benefit of Acuity, Mr. Mowery and Mr. Masko, together with Gary Tapp and John Jarding, filed four patent applications claiming subject

matter derived from confidential and trade secret information obtained while Mr. Mowery and

Mr. Masko were employed at Acuity.  Copies of the face pages of the now-published U.S.

Provisional Patent Application Nos. 62/283,870, 62/283,871, and 62/365,838 and PCT Patent

Application No. PCT/US2016/051550, are attached as <u>Exhibit F</u> ("Amerivision Patent

Applications").  In so doing, Defendants knowingly and intentionally interfered with and

frustrated the essential purpose of the IP Purchase Contract dated June 16, 2015, between the

trustee of Acuity and AMC.[1]

22.     On information and belief, all of the Amerivision Patent Applications claim

subject matter that is the intellectual property of Plaintiffs.  Specifically, on information and

belief, these applications disclose and/or claim subject matter that:  relates directly to Mr. Masko

and Mr. Mowery's work at Acuity on dry AMD; relates directly to Acuity's actual or

demonstrably anticipated research and development on dry AMD; and results from work

performed by Mr. Mowery and Mr. Masko for Acuity related to products and services to treat

dry AMD.  Further, on information and belief, the Amerivision Patent Applications, and any

other related applications, disclose and/or claim subject matter invented using Acuity's

equipment, supplies, facility, and confidential and trade secret information.  The Amerivision

Patent Applications name Mr. Masko, Mr. Mowery, John Jarding and Gary Tapp as inventors.

23.     Defendants' conduct after the date of the IP Purchase Contract is specified as

follows:

        a)     On September 15, 2015, Mr. Mowery, Mr. Masko, and Mr. Jarding filed

               two patent applications identified as U.S. Provisional Application Nos.

---

[1]  Plaintiffs are currently only aware of the filings of these four patent applications.  However, any other related patent applications they have filed, individually or through Amerivision, may likewise be the property of Plaintiffs.

62/283,870 and 62/283,871.  These filings (the "September 15, 2015 patent applications") were made prior to the incorporation of Amerivision.

b)    On information and belief, the subject matter of each of the September 15, 2015 patent applications is either identical to or derived from confidential and trade secret information that belonged to Acuity and that now belongs to Plaintiffs.

c)    On November 17, 2015, Amerivision was incorporated.  The September 15, 2015 patent applications were subsequently assigned to Amerivision.

d)    On July 22, 2016, Gary Tapp and John Jarding filed a patent application identified as U.S. Provisional Application No. 62/365,838.  The July 22, 2016 patent application was subsequently assigned to Amerivision.  The subject matter of the July 22, 2016 patent application relates to the subject matter of the September 15, 2015 patent applications.

e)    On September 13, 2016, Mr. Mowery, Mr. Masko, Mr. Jarding, and Mr. Tapp filed a patent application identified as PCT Patent Application No. PCT/US2016/051550 ("PCT Application").  The PCT Application claims priority to the September 15, 2015 patent applications and to the July 22, 2016 patent application.  The PCT Application is assigned to Amerivision.  On information and belief, the PCT Application describes and/or claims subject matter that is either identical to or derived from confidential and trade secret information that belonged to Acuity and that now belongs to Plaintiffs.

24.    The Employment Agreements indicate that Defendants are not legally allowed to use, divulge to the public, or otherwise reveal the contents of Acuity's proprietary trade secret and confidential information that now belongs to Plaintiffs.  Further, Defendants are not legally

allowed to claim ownership rights derived from Acuity's intellectual property that now belongs to Plaintiffs.  Any attempt by Defendants to seek or claim such ownership rights violates the Employment Agreements and interferes with Plaintiffs' ownership interests acquired by virtue of Acuity's sale to AMC in the IP Purchase Contract.  As such, Amerivision is wrongfully in possession of Plaintiffs' intellectual property.

25.     Independent of the Employment Agreements, Defendants, in their role as officers of Acuity, had a fiduciary duty to assign any patent rights derived from:  (i) activities and work conducted while employed at Acuity; (ii) activities and work conducted using Acuity's real and tangible property; and (iii) activities and work conducted using Acuity's proprietary, confidential, and trade secret information.

26.     Further, as a consequence of Defendants' actions, a significant portion of Plaintiffs' trade secret and confidential information obtained from Acuity has been rendered public.  As such, the economic value that Plaintiffs derived from the secrecy of such information has been destroyed or substantially reduced.

27.     Further, Defendants now seek to obtain patent protection on intellectual property that belongs to Plaintiffs.  As such, Defendants have damaged Plaintiffs' ability to develop, manufacture, and lease or sell products for the treatment of dry AMD.

### COUNT I: MISAPPROPRIATION OF TRADE SECRETS
### Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(1)

28.     Plaintiffs restate and incorporate Paragraphs 1-27 as if fully stated herein.

29.     Plaintiffs obtained ownership, by virtue of the IP Purchase Contract, of trade secrets, including but not limited to, methods and systems for the treatment of dry AMD using microcurrent stimulation on the upper and lower eyelids of a patient.  Such trade secrets include therapeutic methods and products developed for dry AMD therapy based on the research and

development of Acuity, developed during the tenure of Defendants Masko and Mowery at Acuity.

30.     Plaintiffs' confidential, proprietary and trade secret information derives independent economic value from not being generally known to others, or not being readily ascertainable through proper means by others.  Further, the confidential, proprietary and trade secret information of Plaintiffs derives independent economic value through the further development of innovative products, services, and technologies for the treatment of dry AMD.

31.     Plaintiffs and Acuity, its predecessor-in-interest, took reasonable steps to safeguard their trade secret, confidential, and proprietary information.  On information and belief, the steps taken include, but are not limited to: (a) precluding individuals with such information from divulging them through the use of employment agreements, non-disclosure agreements, and other contracts; (b) marking documents and identifying communications and indicating the confidential, proprietary, and/or trade secret nature of such documents and communications; and (c) maintaining physical possession and control of trade secret, confidential, and proprietary information.

32.     Defendants Mowery and Masko, by virtue of their roles as employees and executives of Acuity, gained access to Plaintiffs' confidential, proprietary, and trade secret information during the course of their employment with Acuity and its predecessor, Bioenergy Therapeutics, Inc.

33.     Defendants Mowery and Masko owed a duty to maintain the secrecy of Plaintiffs' confidential, proprietary and trade secret information and material acquired from Acuity. Nevertheless, Defendants Mowery and Masko willfully misappropriated Plaintiffs' trade secrets with the specific intent to misappropriate Plaintiffs' trade secrets and the knowledge that

Plaintiffs' trade secrets were formerly the property of Acuity and now rightfully the property of Plaintiffs by virtue of the IP Purchase Contract.

34.     As a direct and proximate result of Defendants' misappropriation of Plaintiffs' trade secrets, Plaintiffs have suffered and will continue to suffer injury to its good will, the disclosure and use of their trade secrets, actual and consequential damages, and immediate and irreparable harm until Defendants Mowery and Masko are (a) ordered to return Plaintiffs' confidential and proprietary information and materials and (b) enjoined from further possession, use and disclosure of such information.

35.     Due to Defendants' violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b), Plaintiffs are entitled, among other remedies, to (a) an order requiring Defendants Mowery and Masko to return Plaintiffs' confidential and proprietary information and materials to Plaintiffs and (b) an injunction prohibiting further possession, use and disclosure by Defendants Mowery and Masko, of such confidential information.

36.     Due to Defendants' violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b), Plaintiffs are also entitled, among other remedies, to recover damages for actual loss caused by the misappropriation of Plaintiffs' trade secrets, and damages for any unjust enrichment enjoyed by Defendants, in an amount to be determined at trial, caused by the misappropriation of Plaintiffs' trade secrets. 18 U.S.C. § 1836(b)(3)(B).

37.     Due to Defendants' willful and malicious misappropriation of Plaintiffs' trade secrets in violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b), Plaintiffs are also entitled to recover double damages and attorney's fees. 18 U.S.C. § 1836(b)(3)(C), (D).

## COUNT II: MISAPPROPRIATION OF TRADE SECRETS
### Minnesota Uniform Trade Secrets Act ("MUTSA"), Minn. Stat. § 325C
### (Defendants Mowery and Masko)

38.     Plaintiffs restate and incorporate Paragraphs 1-37 as if fully stated herein.

39.     Plaintiffs are the owners of trade secrets, including but not limited to, methods and systems for the treatment of dry AMD using microcurrent stimulation on the upper and lower eyelids of a patient.  Such trade secrets include therapeutic methods and products developed for dry AMD therapy based on the research and development of Acuity and developed during the tenure of Defendants Masko and Mowery at Acuity.

40.     Plaintiffs' confidential, proprietary and trade secret information derives independent economic value from not being generally known to others, or not being readily ascertainable through proper means by others.  Further, the confidential, proprietary and trade secret information obtained from Acuity by Plaintiffs derives independent economic value through the further development of innovative products, services, and technologies for the treatment of dry AMD.

41.     Plaintiffs and Acuity, its predecessor-in-interest, took reasonable steps to safeguard their trade secret, confidential, and proprietary information.  On information and belief, the steps taken include, but are not limited to: (a) precluding individuals with such information from divulging them through the use of employment agreements, non-disclosure agreements, and other contracts; (b) marking documents and identifying communications and indicating the confidential, proprietary, and/or trade secret nature of such documents and communications; and (c) maintaining physical possession and control of trade secret, confidential, and proprietary information.

42.     Defendants Mowery and Masko, by virtue of their roles as employees and executives of Acuity, gained access to Plaintiffs' confidential, proprietary, and trade secret information during the course of their employment with Acuity and its predecessor, Bioenergy Therapeutics, Inc.

43.     Defendants Mowery and Masko owed a duty to maintain the secrecy of Plaintiffs' confidential, proprietary and trade secret information and material.   Nevertheless, Defendants Mowery and Masko willfully misappropriated Plaintiffs' trade secrets with the specific intent to misappropriate Plaintiffs' trade secrets and the knowledge that Plaintiffs' trade secrets were formerly the property of Acuity and now rightfully the property of Plaintiffs by virtue of the IP Purchase Contract.

44.     As a direct and proximate result of Defendants' misappropriation of Plaintiffs' trade secrets, Plaintiffs have suffered and will continue to suffer: actual and consequential damages, injury to their good will, and the wrongful disclosure and use of their trade secrets. Further, Plaintiffs will suffer immediate and irreparable harm until and unless Defendants Mowery and Masko are (a) ordered to return Plaintiffs' confidential and proprietary information and materials and (b) enjoined from further possession, use and disclosure of such information.

45.     Through their misappropriation and use of the information and materials belonging to Plaintiffs for their own benefit, Amerivision's benefit, and the benefit of others, Defendants Mowery and Masko violated MUTSA, Minn. Stat. §§ 325C.01 et seq. .

46.     As a direct and proximate result of Defendants Mowery and Masko's violation of MUTSA, Plaintiffs are entitled, among other remedies, to (a) an order requiring Defendants Mowery and Masko to return Plaintiffs' confidential and proprietary information and materials and (b) and injunction prohibiting further possession, use and disclosure by Defendants Mowery and Masko, of such information.

47.     Also as a direct and proximate result of Defendants Mowery and Masko's violation of MUTSA, Plaintiffs are entitled, among other remedies, to compensatory damages, exemplary damages, and attorneys' fees in an amount to be proven with specificity at trial.

## COUNT III: TORTIOUS INTERFERENCE WITH CONTRACT
### Minnesota Common Law
### (Masko and Mowery)

48.     Plaintiffs restate and incorporate Paragraphs 1-47 as if fully stated herein.

49.     After their employment at Acuity, Defendants Masko and Mowery remained obligated to abide by and perform the surviving portions of their Employment Agreements with Acuity, including the obligations to maintain the secrecy and confidentiality of information derived during their employment at Acuity.

50.     Defendants were aware of the Acuity Bankruptcy Proceedings and the sale to AMC of its intellectual property and other tangible and intangible property.  As such, Defendants were aware of the fact that AMC was the rightful owner of all Acuity intellectual property.

51.     In deliberate disregard for Acuity's intellectual property rights acquired under the Employment Agreements and AMC's purchase of such rights, Defendants intentionally interfered with AMC's contract to purchase the intellectual property and other tangible and intangible property from Acuity in the Acuity Bankruptcy Proceedings by, among other things, filing the Amerivision Patent Applications.

52.     Defendants' interference with the IP Purchase Contract was without justification, and was in direct conflict with said contract.

53.     Defendants engaged in these improper actions without legal justification and with the sole purpose and intent of interfering with or preventing Plaintiffs from deriving value from its intellectual property.

54.     As a direct and proximate result of Defendants' tortious interference, Plaintiffs have suffered damages to be proven with specificity at trial.

## COUNT IV: BREACH OF CONTRACT
### Minnesota Common Law
### (Defendants Mowery and Masko)

55.     Plaintiffs restate and incorporate Paragraphs 1-54 as if fully stated herein.

56.     Defendants Mowery and Masko's conduct in filing for the Amerivision Patent Applications based on AMC's intellectual property is in direct breach of the Intellectual Property Provisions of their Employer Agreements.

57.     Plaintiffs and Acuity have fulfilled their pertinent obligations under the Employment Agreements.

58.     As a result of Defendants Mowery and Masko's breaches, Plaintiffs stand to suffer, and will continue to suffer, immediate and irreparable harm in the form of loss of confidential and propriety information including valuable trade secrets for which there is no adequate remedy at law.

59.     As a direct and proximate result of Defendants Mowery and Masko's breach of contract, Plaintiffs are entitled to an order requiring Defendants to assign the Amerivision Patent Applications, which are derived from Plaintiffs' intellectual property, to Plaintiffs.  No other adequate remedy exists to compensate Plaintiffs for their injury.

### COUNT V: UNJUST ENRICHMENT
### Minnesota Common Law

60.     Plaintiffs restate and incorporate Paragraphs 1-59 as if fully stated herein.

61.     In the alternative to breach of contract or other legal bases for relief, Defendants' conduct in filing for the Amerivision Patent Applications based on AMC's intellectual property acquired through the IP Purchas Contract conferred upon each Defendant a substantial benefit and economic advantages that rightfully belong to Plaintiffs.

62.     Defendants enjoyed, and continue to enjoy, the benefits and economic advantages, at the expense of Plaintiffs, without compensating Plaintiffs for the value of the benefit conferred—all of which were obtained, received, and/or enjoyed under inequitable and unjust circumstances.

63.    Defendants accepted and retained the benefits such that they should be ordered by this Court to reimburse Plaintiffs for the full value of the benefits conferred and ordered to return the intellectual property that rightfully belongs to Plaintiffs.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury on all triable issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment for it and against Defendants finding that:

A.   Defendants Masko and Mowery have misappropriated Plaintiffs' trade secret and confidential information under the Defend Trade Secrets Act of 2016, 18 USC § 1836 and award Plaintiffs: (1) an injunction to prevent the further actual and threatened misappropriation of Plaintiffs' trade secrets; (2) damages for actual loss caused by the misappropriation of the Plaintiffs' trade secrets and for any unjust enrichment enjoyed by Defendants in an amount to be proven at trial; and (3) double damages and attorney's fees due to Defendants' willful and malicious misappropriation of Plaintiffs' trade secrets;

B.   Defendants Masko and Mowery have misappropriated Plaintiffs' trade secret and confidential information under MUTSA, Minn. Stat. §§ 325C.01 et seq. and award Plaintiffs: (1) an injunction to prevent the further actual and threatened misappropriation of Plaintiffs' trade secrets; and (2) damages for actual loss caused by the misappropriation of the Plaintiffs' trade secrets and for any unjust enrichment enjoyed by Defendants;

C.  Defendants Masko and Mowery have tortuously interfered with Plaintiffs' IP Purchase Contract with Acuity and award Plaintiffs with damages for actual losses caused by Defendants' actions;

D.  Defendants Masko and Mowery have breached their Employment Agreements and order Defendants to: (i) immediately assign all interests in patent applications filed based on AMC's intellectual property to AMC; (ii) cease filing for patents based on AMC's intellectual property; and (iii) cease divulging the trade secret and confidential information of Plaintiffs in violation of the surviving portions of their Employment Agreements;

E.  Defendants have been unjustly enriched through the theft of Plaintiffs' intellectual property and use of Plaintiffs' trade secrets and order Defendants to: (i) immediately assign all interest in patent applications filed based on AMC's intellectual property to AMC; (ii) pay damages for actual loss caused by the misappropriation of the Plaintiffs' trade secrets and for any unjust enrichment enjoyed by Defendants in an amount to be proven at trial; and cease divulging or otherwise using Defendants' intellectual property and trade secret material;

F.  Plaintiffs be awarded exemplary damages and attorneys' fees under the Defend Trade Secrets Act;

G.  Plaintiffs be awarded pre-judgment and post-judgment interest at the maximum rate allowed by law; and

H.  Plaintiffs be awarded such other and further relief as this Court deems just and proper.

Dated: September 18, 2017                Respectfully submitted,


                                         STINSON LEONARD STREET LLP

                                         s/Kevin D. Conneely
                                         Kevin D. Conneely (#192703)
                                         kevin.conneely@stinson.com
                                         150 South Fifth Street, Suite 2300
                                         Minneapolis, MN  55402
                                         Phone:  (612) 335-1551
                                         Fax:  (612) 335-1657